**O**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAHON NORTH AMERICA, INC., | Case No. 2:11-cv-05835-ODW (JCGx) |
| Plaintiff, | **ORDER RE MOTIONS TO DISMISS [54], [55]** |
| v. | |
| JOSHUA HON, et al., | |
| Defendants. | |

Pending before the Court are two concurrently filed motions: (1) Defendant Mobility Holdings, Ltd.'s motion to dismiss Plaintiff Dahon North America's second amended complaint ("SAC") for lack of personal jurisdiction (Dkt. No. 55); and (2) Defendants' motion to dismiss Plaintiff's SAC under Fed. R. Civ. P. 12(b)(6), or alternatively, for a more definite statement under Fed. R. Civ. P. 12(e). (Dkt. No. 54). After careful consideration of the oral arguments and papers filed in support of and in opposition to the instant motions, the Court finds as follows.

# I.   BACKGROUND

Dr. David T. Hon founded the folding bicycle brand, Dahon.  (SAC ¶ 17.) Dahon North America ("DNA") was formed in 1982.  (*Id.* ¶ 18.)  That same year, DNA began operating its first Asian subsidiary in Taiwan.  (*Id.* ¶ 24.)  Since DNA's inception, Florence Hon, Dr. Hon's wife, served as its director and corporate secretary.  (*Id.* ¶¶ 17 n.2, 26.)  Since 1992, Joshua Hon, son of Dr. Hon and Florence, has worked as Vice President of Sales and Marketing for DNA.  (*Id.* ¶ 27.)  In that role, he helped oversee and develop sales and marketing strategy for the entire brand and developed DNA's website, www.dahon.com.  (*Id.*)

Around 1996, the assets of the Taiwan subsidiary were transferred to Dahon and Hon Industrial Labs, Ltd., Taiwan ("Dahon Taiwan").  (*Id.* ¶ 24.)  Dr. Hon placed Dahon Taiwan's ownership in Florence's name and appointed her as CEO.  (*Id.* ¶ 26.) In 2010, Joshua and Florence created Mobility Holdings, Ltd.  (*Id.* ¶ 41.)  At this time, Joshua and Florence approached Dr. Hon about purchasing Dahon Taiwan and the Dahon brand, but he refused.  (*Id.* ¶ 32.)  As a result, Joshua and Florence began exerting increased control over Dahon Taiwan by withholding and diverting product orders.  (*Id.* ¶ 33.)

Around June 2011, Joshua and Florence officially announced Tern, their new company and brand.  (*Id.* ¶¶ 35, 44.)  But, neither Joshua nor Florence relinquished their titles or responsibilities from DNA.  (*Id.* ¶ 45.)  Mobility owns Stile Products, Inc. which sells Tern bicycles.  (*Id.* ¶¶ 8, 43.)  The president of Stile is a former officer of DNA, Steve Boyd.  (*Id.* ¶ 9.)

DNA's allegedly stolen assets include its intellectual property: bicycle-related patents, trademarks, and copyrights.  (*Id.* ¶ 19.)  DNA registered the DAHON mark ("Original DAHON mark") for use on bicycles, two BIOLOGIC marks for use on certain bicycle parts, and the ECOLOGIC mark for use on bicycles ("collectively, "Original BIOLOGIC and ECOLOGIC marks").  (*Id.* ¶¶ 48, 51–52.)  On July 8, 2009, Joshua and Florence filed an assignment in the United States Patent and Trademark

Office ("USPTO") transferring the Original BIOLOGIC and ECOLOGIC marks from DNA to Dahon Taiwan. (*Id.* ¶¶ 31, 53.)  On February 1, 2011, Florence and Joshua assigned the BIOLOGIC mark from Dahon Taiwan to Mobility.  (*Id.* ¶ 53.)  At some point, Joshua registered the domain name and website www.dahon.com in his own name.  (*Id.* ¶ 27.)

Further, DNA claims Boyd used his DNA position to transfer DNA's intellectual property to Defendants and to set up Stile as a direct competitor.  (*Id.* ¶ 43.)  DNA also alleges that the employees, assets, funds, bank accounts, and property of Tern all came from DNA.  (*Id.* ¶ 44.)

## II.   PERSONAL JURISDICTION

The Court first addresses Mobility's motion for lack of personal jurisdiction.

When a defendant moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of demonstrating jurisdiction exists.  *Love v. Assoc. Newspapers Ltd.*, 611 F.3d 601, 608 (9th Cir. 2010).  Where, as here, the motion is based on written materials rather than an evidentiary hearing, a court's only question is whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction.  *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).  A plaintiff cannot "simply rest on the bare allegations of its complaint," but undisputed allegations in the complaint must be taken as true.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  Furthermore, "[c]onflicts over statements contained in affidavits must be resolved in [the plaintiff's] favor."  *Love*, 611 F.3d at 608.

District courts have the power to exercise personal jurisdiction to the extent of the law of the state in which they sit.  Fed. R. Civ. P. 4(k)(1)(A); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1988).  California's long-arm jurisdictional statute is coextensive with federal due process requirements, so the jurisdictional analysis for a non-resident defendant under state law and federal due process is the same.  Cal. Civ. Proc. Code § 410.10; *Roth v. Garcia Marquez*, 942

F.2d 617, 620 (9th Cir. 1991).  For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have sufficient "minimum contacts" with the forum state so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Under the "minimum contacts" analysis, a court may obtain either general jurisdiction or specific jurisdiction over a non-resident defendant.  *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001).  If the defendant's activities are insufficient to subject him to general jurisdiction, then the court looks to the nature and quality of the defendant's contacts in relation to the cause of action to determine jurisdiction. *Data Disc, Inc. v. Systems Tech. Assoc. Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977).

Mobility argues that DNA cannot establish general jurisdiction because it is a Hong Kong holding company.  (Mot. at 7.)  DNA concedes that the Court does not have general jurisdiction over Mobility and instead asserts that the Court may exercise specific personal jurisdiction using the *Calder* effects test.  (Opp'n at 5.)  Thus, the Court will only analyze specific jurisdiction.

A court may assert specific jurisdiction over a claim for relief that arises out of a defendant's forum-related activities.  *Rano v. Sipa Press Inc.*, 987 F.2d 580, 588 (9th Cir. 1993).  The analysis for specific jurisdiction is as follows:

> (1) the nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or residents thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987).  The plaintiff bears the burden of satisfying the first two prongs, and if either of these is not satisfied, personal jurisdiction is not established.  *Schwarzenegger*, 374 F.3d at 802.

/ / /

/ / /

Mobility contends that DNA cannot demonstrate there is specific jurisdiction over Mobility for several reasons.  First, Mobility is simply a Hong Kong holding company with no United States contacts.  (Mot. at 9.)  Second, the other Defendants' forum-related activities cannot be imputed to Mobility.  (*Id.* at 10–15.)  Third, Mobility's ownership of Stile, a California corporation, is insufficient to extend jurisdiction to Mobility.  (*Id.* at 7.)

The Court agrees with these arguments and recognizes the relatively inactive role that Mobility plays as a related entity of the Defendants.  But, DNA alleges that Mobility currently holds the converted BIOLOGIC mark, among other assets.[1]  (SAC ¶ 53.)  The Court will analyze whether Mobility's possession of the BIOLOGIC mark subjects it to specific jurisdiction.

## A.    Purposeful availment or direction

A purposeful availment analysis is used in contract suits whereas a purposeful direction analysis is used in tort suits.  *Schwarzenegger*, 374 F.3d at 802.  Here, the appropriate framework is purposeful direction because the cause of action is conversion, a tort.  Purposeful direction is evaluated by the effect a foreign act has on the forum state.  *Id.* at 803.  Under *Calder*, the effects test requires that the defendant have: (1) committed an intentional act; (2) expressly aimed the act at the forum state; and (3) caused harm that the defendant knew was likely to be suffered in the forum state.  *Id.* (citing *Calder v. Jones*, 465 U.S. 783 (1984)).

### 1.    Intentional act

The first element of the *Calder* effects test is the commission of an intentional act.  An intentional act requires an "intent to perform an actual, physical act in the real

---

[1] DNA's complaint is unclear whether additional intellectual property or assets allegedly belonging to DNA were transferred to Mobility.  Mobility stated that it holds two of the disputed DNA trademarks.  (Reply at 3.)  DNA's complaint alleges that intellectual property and assets were transferred to Mobility.  (SAC ¶ 41.)  Yet, DNA identifies only the BIOLOGIC mark specifically as the stolen intellectual property.  (*Id.* ¶ 53.)  The Court hesitates to speculate exactly what Mobility holds at the present moment and bases the jurisdictional analysis solely on Mobility's possession of the disputed BIOLOGIC mark.

1   world, rather than an intent to accomplish a result of consequence of that action."

2   *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2012).

3       DNA avers that Joshua and Florence fraudulently assigned DNA's intellectual

4   property to Dahon Taiwan.  (SAC ¶ 53.)  Then they assigned the BIOLOGIC mark

5   from Dahon Taiwan to Mobility.  (*Id.*)  DNA argues that Mobility's possession of the

6   BIOLOGIC mark is akin to possession of another's chattel; therefore Mobility

7   committed the intentional act of conversion.  (Opp'n at 7.)

8       Mobility argues the alleged conversion of DNA's intellectual property and

9   other assets (including the BIOLOGIC mark) was committed by others, prior to

10  Mobility's existence. (Mot. at 9.)  When Mobility was subsequently formed, instead

11  of being an active participant in the alleged scheme, Mobility contends that it

12  "exhibited only the sort of neutral, non-directed conduct . . . insufficient as a basis for

13  personal jurisdiction" because it merely received the BIOLOGIC mark.  (Reply at 3.)

14  And therefore, Mobility did not and could not have performed an intentional act.  (*Id.*)

15      In *Kayne*, the court faced a similar question—whether the court had specific

16  jurisdiction over several offshore entities that received, via other defendants'

17  transactions, tangible assets from a corporation facing a potential judgment.  *Kayne v.*

18  *Ho*, CV 09-6816 CAS (CWx), 2010 U.S. Dist. LEXIS 126325, at *7–8, 16 (C.D. Cal.

19  Nov. 15, 2010).  There, following a judgment against Grande Holdings Limited (one

20  of the defendants' various holding companies), the defendants: (1) sold Grande's

21  tangible assets, including commercial real estate; (2) distributed Grande's holdings,

22  moving them to the individual defendants and their other holding companies; and (3)

23  engaged in other transactions designed to transfer Grande's assets for little or no

24  value.  (*Id.* at *8.)  The court concluded that these asset transfers, including the act of

25  receiving the assets, constituted intentional acts.  (*Id.* at *16.)

26      Similarly, Defendants Joshua and Florence executed a series of transactions

27  transferring the BIOLOGIC mark to Mobility.  (SAC ¶ 53.)  There is no indication

28  that DNA received anything in return for these assets.  Though the value of the

1   transferred assets in *Kayne* eclipses that in this case, the Court nevertheless concludes
2   that Defendants' transfer of the BIOLOGIC mark from DNA to Mobility was an
3   intentional act.   Further, the Court finds that Mobility's receipt of the BIOLOGIC
4   mark from Dahon Taiwan was an intentional act.   However passively Mobility
5   characterizes its role, this subjects Mobility to the tort of conversion.  *Schroeder v.*
6   *Auto Driveaway Co.*, 11 Cal. 3d 908, 918 (1974) (one in possession of a chattel as
7   bailee or otherwise who, on demand, refuses without proper qualification to surrender
8   it to another entitled to its immediate possession is subject to liability for its
9   conversion).

10          2.   *Expressly aimed*

11          The second element of the *Calder* effects test requires that Mobility's conduct
12   be expressly aimed at the forum.  *Brayton Purcell*, 606 F.3d at 1129.  This element is
13   satisfied when a defendant is alleged to have engaged in wrongful conduct targeting a
14   plaintiff who the defendant knows to reside in the forum state.  *Bancroft & Masters,*
15   *Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th. Cir. 2000).

16          DNA argues Mobility expressly aimed its conduct at California because it now
17   holds a California corporation's fraudulently conveyed intellectual property.  (SAC
18   ¶¶ 53, 68.)   Mobility argues that California was not the focal point of the harm
19   because this action concerns a Taiwanese company, owned and run by residents of
20   Taiwan, and a Chinese company, run by a resident of China.  (Mot. at 18.)  Mobility
21   also contends that its conduct, even if the conversion allegation was true, was not
22   expressly aimed at California because Defendants' California sales of any products
23   relating to the stolen intellectual property were insignificant.[2]  (*Id.* at 19.)

24          In *Calder*, a California entertainer alleged in California state court that two
25   Florida residents wrote a libelous magazine article about her.  *Calder*, 465 U.S. at
26   784–86 (1984).  The Supreme Court found that the California court had jurisdiction

27

28   [2] Defendants claim that United States sales of Dahon branded bicycles account for only 6% of
     worldwide sales, and sales specifically made in California are far less than that.  (Mot. at 19.)

because in writing a piece circulated in California, the petitioners expressly aimed their conduct at California and "impugned the professionalism of an entertainer whose television career was centered in California." *Id.* at 812.  Mobility asserts that unlike *Calder*, Mobility's alleged conversion was not expressly aimed at California because any effect in California was insignificant.  The Court disagrees.

Mobility errs by arguing only the secondary effect of Mobility's conversion—that Defendants' sales involving Mobility's converted BIOLOGIC mark were insignificant in California.  Mobility neglects the primary effect of its intentional act—that is, Mobility's conversion of the BIOLOGIC mark deprived DNA, a California corporation, of its intellectual property.  Although Mobility argues it is a passive holding company and did nothing actively, the Court finds that Mobility's alleged possession of DNA's converted property establishes that Mobility's conduct was expressly aimed towards a California company, and therefore, towards California.

### 3.   Foreseeable harm

In order to satisfy the third element of the *Calder* effects test, DNA must demonstrate that Mobility "caused harm that it knew was likely to be suffered in the forum." *Brayton Purcell*, 606 F.3d at 1131.  The element may be satisfied even if "the bulk of the harm" occurred outside the state.  *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1207 (9th Cir. 2006).

This element is easily met.  By receiving and continuing to hold DNA's intellectual property, Mobility deprived DNA of its property and any associated use.  This is harm that Mobility knew was likely to be suffered by DNA—and therefore in California.[3]

/ / /

---

[3] Mobility may contend it had no knowledge that its possession of the BIOLOGIC mark would harm anyone, let alone a California corporation.  Given the circumstances of this case and the relationship of the parties, the Court finds that this explanation, if proffered, would be highly implausible.  Further, even if Mobility is nothing more than a "piggy bank" that receives assets from the other Defendants, Mobility must still execute transfer agreements and be expected to reasonably scrutinize the origin of its incoming assets—and therefore cannot allege lack of knowledge.

1    Accordingly, the Court finds that the purposeful direction prong for specific

2    jurisdiction has been satisfied.

3    **B.**    **Arises out of or relates to forum related activities**

4    The second prong of the test for specific jurisdiction requires that "the claim

5    asserted in the litigation arises out of the defendant's forum related activities."

6    *Panavision*, 141 F.3d at 1322. This requires a showing of "but for" causation. *Id.*

7    DNA alleges that Mobility is part of a scheme to steal DNA's intellectual

8    property and stash it away in offshore entities. DNA's claim of conversion arises out

9    of Mobility's continued possession of DNA's BIOLOGIC mark. As discussed above,

10    Mobility does not need to have committed the initial act of conversion to be liable.

11    Mobility may be liable for conversion by merely holding on to wrongfully possessed

12    property. *Schroeder*, 11 Cal. 3d at 918. Therefore, the Court finds that the "arises out

13    of" prong is satisfied.

14    **C.**    **Reasonableness**

15    If the plaintiff establishes the first two prongs, then it is the defendant's burden

16    to "present a compelling case" that the third prong, reasonableness, has not been

17    satisfied. *Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King*, 471 U.S. at 477).

18    This requires the court to balance seven factors: (1) the extent of the defendant's

19    purposeful availment; (2) the burden on the defendant; (3) conflicts of law between

20    the forum state and the defendant's state; (4) the forum's interest in adjudicating the

21    dispute; (5) judicial efficiency; (6) the plaintiff's interest in convenient and effective

22    relief; and (7) the existence of an alternative forum. *Roth*, 942 F.2d at 623.

23    Mobility alleges generally that the exercise of jurisdiction is unreasonable

24    because it has not purposefully availed itself to this forum, litigation here would be

25    unduly burdensome, and there is an alternative (foreign) forum for this dispute. In

26    response, DNA argues it is reasonable for Mobility to defend itself here because

27    Mobility converted DNA's United States trademark, a mark enforceable only in the

28    United States and held by a California corporation. (Opp'n at 19.)

Ordinarily, ordering an offshore holding company with limited California contacts to defend a lawsuit in the United States would be burdensome.  But, in this case, there is no better forum because Mobility allegedly holds a United States trademark converted from a California corporation.  Further, should the Court find that the BIOLOGIC mark was wrongfully acquired from DNA, without Mobility, the trademark could not be returned to its rightful owner and no sufficient relief could be fashioned.  Further, the Court doubts that DNA would be able to bring an action for the conversion of a United States trademark in a foreign jurisdiction.  Finally, since all the other Dahon-related parties are joined in this lawsuit, and DNA alleges these Defendants played a role in stripping DNA of its assets, including Mobility in this action is the most efficient means to settle the dispute.  Thus, on balance, the Court finds that these reasonableness factors heavily weigh in DNA's favor.

Accordingly, the Court finds that it has personal jurisdiction over Mobility and **DENIES** Mobility's motion to dismiss for lack of personal jurisdiction.

## III.   RULE 12(B)(6) MOTION TO DISMISS

The Court now turns to Defendants' Rule 12(b)(6) motion to dismiss. Defendants seek to dismiss DNA's claims for breach of fiduciary duty, tortious interference with prospective economic relations, fraudulent transfer and registration of trademarks, trademark infringement, trademark dilution, false advertising and false designation of origin, accounting, unfair competition under 15 USC § 1125(a), and unjust enrichment.  Additionally, Defendant Boyd seeks to dismiss all claims asserted against him for failure to state a claim.

Dismissal under Rule 12(b)(6) can be based on "the lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  To withstand a motion to dismiss, a complaint generally must satisfy only the minimal notice pleading requirements of Rule 8(a)(2).  *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003).  Rule 8(a)(2) requires "a short and plain statement of the claim showing that

the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2).   For a complaint to sufficiently state a claim, its "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   While specific facts are not necessary so long as the complaint gives the defendant fair notice of the claim and the grounds upon which the claim rests, a complaint must nevertheless "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Iqbal*'s "plausibility standard" is "not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.   Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement of relief." *Id.*   "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).   The determination whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 678.

When considering a Rule 12(b)(6) motion, a court is generally limited to considering material within the pleadings and must construe "[a]ll factual allegations set forth in the complaint . . . as true and . . . in the light most favorable to [the plaintiff]." *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001) (citing *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996)).   A court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

The Court will address Defendants' motion to dismiss in the order of arguments presented in Defendants' papers.

/ / /

**A.     Breach of fiduciary duty**

Defendants assert that the SAC fails to state a claim for breach of fiduciary duty against Steve Boyd or Joshua Hon because it sets forth no factual allegations sufficient to show that either of them possessed or exercised any management authority over the affairs of DNA.  (Mot. at 6.)  Therefore, Defendants argue, they were not fiduciaries.  (*Id.*)

The elements of a cause of action for breach of fiduciary duty are: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) resulting damages. *Pellegrini v. Weiss*, 165 Cal. App. 4th 515, 524 (2008).  Under California law, "an officer who participates in management of the corporation, exercising some discretionary authority, is a fiduciary of the corporation as a matter of law."  *GAB Business Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.*, 83 Cal. App. 4th 409, 420–21 (2000).

Here, DNA pleaded that Boyd and Joshua were managing officers of DNA. DNA alleges that Joshua was "the Vice President, Sales & Marketing for DNA and the Dahon brand" who "over[saw] and develop[ed] the sales and marketing strategies for the entire Dahon brand."  (SAC ¶ 27.)  In that capacity Joshua created the Dahon website.  (*Id.*)  In addition, when DNA considered going public his objections were sufficient to prevent the company from going public.  (*Id.* ¶ 29.)  As to Boyd, DNA alleges that he was an officer of DNA.  (*Id.* ¶¶ 9, 43.)  In total, DNA's pleading is specific enough to suggest that the two were officers who exercised sufficient discretionary authority.

Boyd and Joshua only argue that they do not owe a fiduciary duty.  They do not dispute that DNA adequately pleaded breach of duty and damages.  Regardless, the Court finds that DNA stated sufficient facts alleging that Boyd and Joshua were part of the overarching scheme that usurped assets and intellectual property from DNA. Accordingly, Defendants' motion to dismiss DNA's claim for breach of fiduciary duty against Joshua Hon and Steve Boyd is **DENIED**.

**B.      Trademark infringement and trademark dilution**

Defendants move to dismiss the trademark infringement and trademark dilution claims for lack of standing because DNA is not the registered owner of the trademarks.  (Mot. at 8, 10.)  DNA alleges Defendants infringed its Original DAHON, Original BIOLOGIC, and Original ECOLOGIC marks.  (SAC ¶ 86.)  Further, DNA asserts that Defendants' use of the Original DAHON and Original BIOLOGIC marks constitutes trademark dilution.  (*Id.* ¶ 93.)

*1.      Trademark infringement*

A party lacks standing to sue for trademark infringement if it does not own the trademark at issue.  *Gaia Techs. v. Reconversion Techs.*, 93 F.3d 774, 777 (Fed. Cir. 1996).  There must be ownership at the time the suit was filed.  *Id.*  A subsequent assignment conferring ownership, even if purported to be retroactive, cannot cure a defect in standing.  *Id.* at 780.

Here, DNA admits Dahon Taiwan is the current registered owner of the Original ECOLOGIC mark and Mobility is the current registered owner of the Original BIOLOGIC mark.  (SAC ¶ 53.)  Taking judicial notice of the assignment record for the Original DAHON mark, the Court finds that Dahon International (and not DNA) is the registered owner for the purposes of this lawsuit.[4]

/ / /

/ / /

/ / /

---

[4] Rule 201 states that "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Because the Court may presume that public records are authentic and trustworthy, *Gilbrook v. City of Westminster*, 177 F.3d 839, 858 (9th Cir. 1999), such public records fall within the purview of Federal Rule of Evidence 201.  *See Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2011); *see* also *Peruta v. County of San Diego*, 678 F. Supp. 2d 1046, 1054 n.8 (S.D. Cal. 2010) (stating that courts may properly take judicial notice of documents appearing on governmental websites).  The trademarks assignment website is an official record memorializing ownership of the Original DAHON mark, and is published by a government organization—the USPTO.  Therefore, the accuracy of this record cannot reasonably be questioned.

Because DNA is not the current registered owner of the Original DAHON, BIOLOGIC, or ECOLOGIC marks, it lacks standing to sue.  Accordingly, the Court **GRANTS** Defendants' motion to dismiss for trademark infringement.[5]

### 2.     Trademark Dilution

The Federal Trademark Dilution Revision Act provides:

> the owner of a famous mark . . . shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark . . . .

15 U.S.C. § 1125(c); *Panavision*, 141 F.3d at 1324.

DNA's dilution claim is unusual.  DNA alleges trademark dilution of the Original BIOLOGIC and ECOLOGIC marks against Defendants, who are the current registered owners of the marks.  DNA also alleges trademark dilution of the Original DAHON mark against Defendants, but DNA does not own that mark.

Ownership of a registered mark is a complete defense in a trademark dilution action against the owner with respect to that mark.  15 U.S.C. § 1125(c)(6).  Thus, this bar prevents DNA from bringing a claim for trademark dilution against Dahon Taiwan for the Original BIOLOGIC and ECOLOGIC marks.

But, unlike a claim for trademark infringement, ownership is not required to bring a claim for trademark dilution.  *See* 15 U.S.C. § 1125(c)(2)(A)(iv) (whether the mark is registered is a factor in determining the fame of the mark, therefore allowing the possibility that a party can sue for dilution on an unregistered mark or a mark owned by a third party).  Instead, the Court finds that this cause of action depends on the fame of the mark.

/ / /

---

[5] The Court also notes that on March 8, 2012, Dahon International, the owner of the Original DAHON mark, assigned the mark to DNA.  It seems this assignment was made to correct the abovementioned standing defect.  But this is insufficient to save the trademark claims.  DNA must have ownership of the Original DAHON mark at the time this suit was filed to bring a claim for trademark infringement.  *Gaia Techs.*, 93 F.3d at 780.

Under the Trademark Dilution Revision Act, four non-exclusive factors are relevant when determining whether a mark is sufficiently famous for anti-dilution protection:

> (1) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties; (2) the amount, volume, and geographic extent of sales of goods or services offered under the mark; (3) the extent of actual recognition of the mark; and (4) whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

15 U.S.C. § 1125(c)(2)(A).  As one court stated, trademark dilution claims are restricted to truly famous marks, such as Budweiser beer, Camel cigarettes, and Barbie dolls.  *Bd. of Regents, Univ. of Texas Sys. v. KST Elec., Ltd.*, 550 F. Supp. 2d 657, 679 (W.D. Tex. 2008).  This Court agrees.

DNA supplies only conclusions relating to the fame of the Original DAHON, BIOLOGIC, or ECOLOGIC marks.  As to the relatively obscure Original BIOLOGIC and ECOLOGIC marks, DNA's assertion that these are famous marks is highly implausible.  As to the Original DAHON mark, DNA's claim to fame has some credibility.  But whatever that level of fame is, it falls far short of the high standard required for a dilution claim.  The Court greatly doubts that the general public of the United States is familiar with the Original DAHON mark.  Further, the fame of the Original DAHON mark cannot compare with that of a truly famous mark, such as Coca-Cola.  Therefore, the Court **GRANTS** Defendants' motion to dismiss DNA's trademark dilution claim.

## C.    False designation of origin and false advertising

Defendants argue the SAC fails to factually support DNA's claim for false designation of origin.  And Defendants contend DNA must own the underlying marks to bring this cause of action.[6]  (Mot. at 13.)  Defendants' statement of law is incorrect.

/ / /

---

[6] Defendants cite *Brookfield* for this proposition.  *Brookfield Commc'n, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1046–47 n.8 (9th Cir. 1999).

1    A claim for false designation of origin requires the following:

2    (1) defendant uses a designation or false designation of origin; (2) the use
     was in interstate commerce; (3) the use was in connection with goods or
3    services; (4) the designation or false designation is likely to cause
     confusion, mistake, or deception as to (a) the affiliation, connection, or
4    association of defendant with another person, or (b) as to the origin,
     sponsorship, or approval of defendant's goods, services, or commercial
5    activities by another person; and (5) plaintiff has or is likely to be
     damaged by these acts.
6

7    *Summit Tech. v. High-Line Med. Instruments Co.*, 933 F. Supp. 918, 928 (C.D. Cal.

8    1996); 15 U.S.C. § 1125(a)(1)(A).

9         The statute does not require ownership, but instead, suggests that ownership is

10   not required: "any person who . . . uses in commerce . . . any false designation of

11   origin . . . shall be liable in a civil action by any person who believes that he or she is

12   likely to be damaged by such act."  15 U.S.C. § 1125(a)(1).  Thus, in order to satisfy

13   standing for a false designation of origin claim, the plaintiff "need only allege

14   commercial injury based upon the deceptive use of a trademark or its functional

15   equivalent."  *Barrus v. Sylvania*, 55 F.3d 468, 469–70 (9th Cir. 1995).

16        DNA alleges that Defendants' use of the Original DAHON, BIOLOGIC, and

17   ECOLOGIC marks on the www.dahon.com and www.thinkbiologic.com websites

18   caused a diversion of sales.  (SAC ¶¶ 96, 99.)  DNA also avers that they are the

19   rightful owners of these marks; therefore Defendants' use of the marks constitutes

20   false statements because Defendants are not the true owners.  (*Id.* ¶¶ 53, 96.)  DNA

21   alleges that the use was in interstate commerce and deceived Defendants' intended

22   audience as to the origin of the goods.  (*Id.* ¶¶ 97, 98.)  As a result, DNA claims it

23   suffered lost sales and diminished goodwill.  (*Id.* ¶ 99.)  Based on these allegations,

24   the Court finds DNA sufficiently pleaded a cause of action for false designation of

25   origin.

26   / / /

27   / / /

28   / / /

1   Accordingly, the Court **DENIES** Defendants' motion to dismiss DNA's claim

2   for false advertising and false designation of origin.[7]

3   **D.     Unfair competition under 15 U.S.C. § 1125(a)**

4   Defendants move to dismiss DNA's claim for unfair competition under 15

5   U.S.C. § 1125(a) because it is duplicative of DNA's claim for false designation of

6   origin.  The Court agrees that there is no independent claim for unfair competition

7   under § 1125(a) apart from false designation of origin or false advertising.  DNA

8   sufficiently pleaded claims for false designation of origin and false advertising as

9   discussed above.  This unfair competition claim brings nothing additional and cannot

10  stand.  Therefore, the Court **GRANTS** Defendants' motion to dismiss DNA's claim

11  for unfair competition under 15 U.S.C. § 1125(a).

12  **E.     Fraudulent transfer and registration of trademarks**

13  Defendants seek to dismiss DNA's claim for fraudulent transfer and registration

14  of trademarks, arguing this duplicates DNA's claim for conversion and also fails to

15  particularly plead the elements of fraud.  (Mot. 15–16.)

16  For fraudulent registration, the relevant statute provides:

17  Any person who shall procure registration in the Patent and Trademark
18  Office of a mark by a false or fraudulent declaration or representation,
    oral or in writing, or by any false means, shall be liable in a civil action
19  by any person injured thereby for any damages sustained in consequence
    thereof.

20  15 U.S.C. § 1120.   Ownership of a mark is not required—any person with a

21  reasonable interest to be protected against the use of fraudulent statements in the

22  procurement of a trademark registration may sue under 15 U.S.C. § 1120.  *Official*

23  *Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1396 (9th Cir. 1993).

24  / / /

---

25  [7] Defendants assert in footnote six that DNA's seventh cause of action is titled false advertising and
26  false designation of origin but the content of DNA's claim refers only to false statements in the SAC.
    (Mot. at 13.)  This is incorrect.  The SAC also refers to the "commercial advertising or promotion"
27  on the websites.  (SAC ¶ 96.)  Because Defendants do not attack the false advertising claim and only
    move to dismiss the false designation of origin claim, the Court will not consider the false
28  advertising claim as part of Defendants' motion to dismiss.

A party seeking to establish a claim of fraud in the procurement of a federal trademark must demonstrate:

> (1) the false representation regarding a material fact; (2) the registrant's knowledge or belief that the representation is false (scienter); (3) the intention to induce action or refrain from action in reliance on the misrepresentation; (4) reasonable reliance on the misrepresentation; and (5) damages proximately resulting from such reliance.

*Stanfield v. Osborne Indus., Inc.*, 52 F.3d 867, 874 (10th Cir. 1995).

DNA alleges Dahon Taiwan improperly registered in its own name the DAHON and BIOLOGIC marks.[8]  (SAC ¶¶ 50, 54–55.)  DNA contends that Dahon Taiwan registered these marks knowing that the marks were to be shared by all Dahon companies, and that the USPTO granted the marks relying on this representation and the fact that DNA (at the time) already possessed the Original DAHON and BIOLOGIC marks.  (*Id.* ¶¶ 50, 55.)  Further, because Dahon Taiwan now claims exclusive ownership of the DAHON and BIOLOGIC marks, DNA suffers damage in the marketplace.  (*Id.*)  Therefore, DNA argues that this is sufficient to state a claim for fraudulent registration.  The Court finds it does not.

DNA offers no facts suggesting at the time of application that Dahon Taiwan made any false representations.  The fact that Dahon Taiwan registered trademarks on behalf of DNA and the other Dahon companies, prior to any breakup between the Dahon companies, is not a false representation.  Indeed, DNA admits that it "occasionally directed that intellectual property in smaller markets be registered under Dahon Taiwan's name, to be held on behalf of and for the benefit of DNA; all Dahon intellectual property was used freely by all Dahon companies, including Dahon Taiwan."  (*Id.* ¶ 24.)  To the extent that Dahon Taiwan registered trademarks on its own behalf, after the alleged breakup, it did so based on its possession of the BIOLOGIC marks and its own company name, Dahon.

/ / /

---

[8] These DAHON and BIOLOGIC marks are separate from the Original DAHON and BIOLOGIC marks.

As to fraudulent transfer of trademarks, the Court finds no authority, and parties cite none, that gives rise to this cause of action.  To the extent DNA intended to plead a general fraud claim relating to the assignment of the Original BIOLOGIC and ECOLOGIC marks from DNA to Dahon Taiwan, the Court finds DNA failed to adequately plead any misrepresentation.  The fact that Joshua and Florence were able to assign two trademarks from DNA to Dahon Taiwan means nothing—DNA's pleading suggests that they had the power to do so in their capacity as officers of both DNA and Dahon Taiwan.  (*Id.* ¶¶ 26–27.)

The true dispute here is whether Defendants converted any of these marks from DNA, not whether some fraud was perpetrated during the transfer or registration of the disputed trademarks.  Accordingly, the Court **GRANTS** Defendants' motion to dismiss DNA's claim for fraudulent transfer and registration of the trademarks.

**F.    Unjust Enrichment**

Defendants seek to dismiss DNA's claim for unjust enrichment, arguing that it is not a valid cause of action in California.  (Mot. at 17.)

There is a split of authority in California whether unjust enrichment is a cause of action.  One line of cases identifies the elements of an unjust enrichment claim as one where there is (1) the receipt of a benefit, and (2) the unjust retention of the benefit at the expense of another.  *Cont'l Cas. Co. v. Enodis Corp.*, 417 Fed. App'x 668, 670 (9th Cir. 2011) (citing *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000)).  The other line of cases identifies unjust enrichment as a "general principle" and not a cause of action.  *Manantan v. Nat'l City Mortg.*, No. C-11-00216 CW, 2011 U.S. Dist. LEXIS 82668, at *14–16 (N.D. Cal. July 28, 2011).  This court follows the latter; unjust enrichment is not a separate cause of action.  *See Thongnoppakun v. Am. Express Bank*, No. CV11-08063-ODW(MANx), 2012 U.S. Dist. LEXIS 25581, at *5 (C.D. Cal. Feb. 27, 2012).

Even if the Court considers unjust enrichment as an independent cause of action, DNA's pleading for this cause of action is merely an attempt to dress up

conversion as unjust enrichment.  DNA contends that Defendants' receipt and use of its employees, assets, funds, bank accounts, customer, manufacturer and distributor lists, and property constitutes unjust enrichment.  (SAC ¶ 126.)  Here, there is no contract, and Defendants have not received a contractual benefit that requires restitution.  Rather, DNA generally alleges that Defendants stole its property and assets.  The appropriate cause of action is conversion.  Thus, the Court **GRANTS** Defendants' motion to dismiss DNA's claim for unjust enrichment.

**G.    Accounting, imposition of constructive trust, and equitable lien**

Defendants move to dismiss DNA's claim for an accounting, imposition of a constructive trust, and an equitable lien because these are not independent causes of action.  (Mot. at 17.)  Additionally, Defendants argue that it is only in rare circumstances that a request for an accounting can be alleged as a separate cause of action and that situation is inapplicable here because it requires a fiduciary relationship. (*Id.* at 18.)

Constructive trust and equitable lien are equitable remedies.  *United States v. Pegg*, 782 F.2d 1498, 1499 (9th Cir. 1986); *Kenneally v. Bank of N.S.*, 711 F. Supp. 2d 1174, 1190 (S.D. Cal. 2010).  Neither constructive trust nor equitable lien is an independent cause of action and must be dismissed.

On the other hand, accounting is an independent cause of action.  *Berster Techs., LLC. v. Christmas*, No. S-11-1541 KJM JFM, 2011 U.S. Dist. LEXIS 127402, at *30 (E.D. Cal. Oct. 3, 2011) (citing *Teselle v. McLoughlin*, 173 Cal. App. 4th 156, 179 (2009)).  This cause of action requires (1) a showing that a relationship exists between the plaintiff and defendant that requires an accounting; and (2) that some balance is due to the plaintiff that can only be ascertained by an accounting.  *Id.*  An accounting requires a relationship, but not necessarily a fiduciary relationship.  *See id.*

As discussed above, DNA sufficiently pleaded a fiduciary relationship as to Joshua and Boyd.  In addition, Florence as a current DNA officer also has a fiduciary relationship with DNA.  (SAC ¶¶ 26, 61.)  Dahon Taiwan is a subsidiary of DNA.

(*Id.* ¶ 10.)  The remaining Defendants—Stile, Mobility, and Mobility Taiwan—do not have the same relationship with DNA.  However, they are inextricably intertwined with the fiduciary Defendants.

For example, Boyd is the current president of Stile.  (*Id.* ¶ 8.)  Stile directly competes with DNA by selling Tern bicycles and infringing DNA's intellectual property.  (*Id.* ¶ 43.)  Mobility owns 90% of Stile. (*Id.* ¶ 8.)  Mobility is the current registered owner of fraudulently conveyed intellectual property from DNA.  (*Id.* ¶ 53.) Mobility Taiwan is a branch of Mobility.  (*Id.* ¶ 7.)  The requisite relationship element is met as to each of the Defendants.  Therefore, DNA sufficiently pleaded a cause of action for an accounting.

Thus, the Court **DENIES** Defendants' motion to dismiss DNA's cause of action for accounting.  The Court **GRANTS** Defendants' motion to dismiss DNA's causes of action for constructive trust and equitable lien.

**H.    Interference with prospective economic advantage against Stile, Mobility, and Mobility Taiwan**

DNA claims tortious interference with prospective economic relations because Defendants' intended to and have disrupted DNA's economic relationships.   (*Id.* ¶¶ 75, 78.)   Defendants seek dismissal of this claim against Stile, Mobility, and Mobility Taiwan because DNA fails to allege any facts against these entities.  (Mot. at 18.)

To state a claim for tortious interference with prospective economic relations, a plaintiff must allege the following five elements:

> (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) defendant's knowledge of the relationship; (3) intentional acts by the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.

*TransWorld Airlines, Inc. v. Am. Coupon Exch., Inc.,* 913 F.2d 676, 689 (9th Cir. 1990).

DNA alleges that it has economic relationships with existing distributors, suppliers, and manufacturers.  (SAC ¶ 76.)  Defendants were aware of DNA's aforementioned relationships because they contacted those individuals and disparaged the quality and legality of DNA's products and business operations.  (*Id.* ¶¶ 77–78.)  Specifically, DNA contends that Joshua and Florence took the distributors to a private retreat in order to reveal their new competing brand, Tern bicycles.  (*Id.* ¶ 35.)  Defendants told distributors that DNA no longer owned the intellectual property, employees, and factories, and indicated that DNA was filing for bankruptcy.  (*Id.*)

Stile owns the Tern brand.  (*Id.* ¶ 43.)  DNA's website www.dahon.com is being commandeered to promote the Tern brand and to disparage DNA.  (*Id.* ¶ 38.)  Further, Mobility is the current registered owner of DNA's intellectual property that Tern is using.  (*Id.* ¶¶ 53, 44.)  DNA avers that as a result of this conduct, former distributors now refuse to work with DNA and instead choose to work with Defendants.  (*Id.* ¶ 80.)  Lastly, DNA alleges the actions have caused and will continue to cause economic damage to DNA in the form of lost profits and sales.  (*Id.* ¶ 81.)  Given these allegations, the Court finds that DNA sufficiently pleaded its claim for tortious interference with prospective economic advantage as to all Defendants.

Accordingly, Defendants' motion to dismiss DNA's claim for tortious interference with prospective economic advantage against Stile, Mobility, and Mobility Taiwan is **DENIED**.

## I.    Trademark infringement, trademark dilution, false designation of origin, and unfair competition against Mobility

Defendants seek to dismiss DNA's causes of action for trademark infringement, trademark dilution, false designation of origin, and unfair competition against Mobility.  Consistent with the rest of this order, only the false designation of origin claim has survived; the other three causes of action have been dismissed as to all Defendants.

/ / /

As discussed above, a claim for false designation of origin requires that:

(1) defendant uses a designation or false designation of origin; (2) the use was in interstate commerce; (3) the use was in connection with goods or services; (4) the designation or false designation is likely to cause confusion, mistake, or deception as to (a) the affiliation, connection, or association of defendant with another person, or (b) as to the origin, sponsorship, or approval of defendant's goods, services, or commercial activities by another person; and (5) plaintiff has or is likely to be damaged by these acts.

*Summit Tech.*, 933 F. Supp. at 928.

DNA alleges no facts that Mobility used the Original BIOLOGIC mark in interstate commerce. Conclusory statements that Mobility sold, distributed, marketed, or advertised infringing products is insufficient. (SAC ¶¶ 86, 88.) Accordingly, the Court **GRANTS** Defendants' motion to dismiss DNA's claims for trademark infringement, trademark dilution, false designation of origin, and unfair competition against Mobility.

**J.     Claims against Defendant Steven Boyd**

Finally, Defendants seek to dismiss all claims against Boyd, arguing that DNA fails to allege any facts specifically implicating him. (Mot. at 20.) DNA alleges that Boyd was an officer and a participant in the overarching scheme. (SAC ¶¶ 8–9, 43.) He appears to be inextricably intertwined with the other Defendants based on his current position as president of Stile and his past position as an officer of DNA. At this point, his actions and liability cannot be easily separated from those of the other Defendants. As such, he will remain in this action. Therefore, the Court **DENIES** Defendants' motion to dismiss all claims against Steve Boyd.

## IV.     RULE 12(E) MOTION

Alternatively, Defendants seek a more definite statement under Rule 12(e) for DNA's claims for trademark infringement, trademark dilution, false designation of origin, and unfair competition. Defendants' Rule 12(e) motion, in part, is moot since DNA's claims for trademark infringement, trademark dilution, and unfair competition have been dismissed. With respect to the remaining claim for false designation of

1  origin, the Court finds this claim is adequately pleaded and therefore **DENIES**
2  Defendants' Rule 12(e) motion.

3                              **V.    CONCLUSION**

4          For the foregoing reasons, Mobility's motion to dismiss for lack of personal
5  jurisdiction is **DENIED**.   Defendants' motion to dismiss under Rule 12(b)(6) is
6  **GRANTED IN PART** and **DENIED IN PART**.  The following causes of action are
7  **DISMISSED** as to all Defendants: trademark infringement; trademark dilution; unfair
8  competition; fraudulent transfer and registration; imposition of constructive trust and
9  equitable lien; and unjust enrichment.  The cause of action for false designation of
10  origin is **DISMISSED** as to Mobility.

11         **IT IS SO ORDERED.**

12
13      April 24, 2012
14                                    _____
15                                        **HON. OTIS D. WRIGHT, II**
                                       **UNITED STATES DISTRICT JUDGE**
16
17
18
19
20
21
22
23
24
25
26
27
28