O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAHON NORTH AMERICA, INC., | Case No. 2:11-cv-5835-ODW(JCGx) |
| Plaintiff, | **CLAIM CONSTRUCTION ORDER** |
| v. | |
| JOSHUA HON; FLORENCE HON; MOBILITY HOLDINGS, LTD.; MOBILITY HOLDINGS, LTD. (TAIWAN BRANCH); STILE PRODUCTS, INC.; STEVE BOYD; DAHON & HON INDUSTRIAL LABS, LTD., | |
| Defendants. | |
| DAHON & HON INDUSTRIAL LABS, LTD.; STILE PRODUCTS, INC.; JOSHUA HON; FLORENCE HON; MOBILITY HOLDINGS, LTD.; MOBILITY HOLDINGS, LTD. (TAIWAN BRANCH), | |
| Counterclaimants, | |
| v. | |
| DR. DAVID HON; DAHON TECHNOLOGIES, LTD.; DAHON NORTH AMERICA, INC., | |
| Counterdefendants. | |

# I. INTRODUCTION

Since 1979, the Hon family has been designing, manufacturing, and selling folding bicycles. Joshua Hon and Florence Hon are the son and wife of Dr. David Hon and collaborated in the Dahon enterprise until 2009. The Hons have since parted ways. Today, Dr. Hon manages and controls Dahon North America, Inc. and Dahon Technologies, Ltd., while Joshua and Florence manage and control Dahon & Hon Industrial Labs, Ltd., Mobility Holdings, Ltd., and Mobility Holdings, Ltd. (Taiwan Branch). In this lawsuit, the two sides assert various claims against each other, including ones for IP infringement and unfair competition.

In addition to the parties mentioned above, Stile Products, Inc. is a U.S. bicycle company and is the exclusive licensee of the two remaining patents-in-suit, D622,638 and D632,615. Both the '638 patent and the '615 patent are currently assigned to Mobility Holdings, Ltd., and are design patents that claim an ornamental design for a folding bicycle frame.



'638 patent



'615 patent

As a first step in determining patent infringement, the Court construes the essential terms of the patents. Even though the patents-in-suit are design patents—and are relatively simple—the Court must still construe the claims. After considering the parties' briefs outlining their competing constructions, the Court finds oral argument unnecessary and construes the asserted claims as set forth below. Fed. R. Civ. P. 78; L.R. 7–15.

## II.   LEGAL STANDARD

Even in design patent cases, the Court has a duty to conduct claim construction. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008) (en banc). But because design patents are typically claimed in visual form, claim construction should be flexible and not necessarily comprise a detailed verbal description of the claimed design. *Id.*

/ / /

In some instances, the claim construction should distinguish the ornamental features of the patented design from the functional aspects of the design. *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293 (Fed. Cir. 2010). Yet, the task of distinguishing the ornamental features from the functional ones must be tempered—a detailed verbal description of the claimed design may place an undue emphasis on particular features of the design; and may hinder examination of the design as a whole. *Crocs, Inc. v. ITC*, 598 F.3d 1294, 1302 (Fed. Cir. 2010). To properly construe the claims, the Court must consider intrinsic evidence (the patents' specification and prosecution history) and extrinsic evidence (e.g., expert testimony, references to contemporaneous dictionaries). *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005).

## III.   DISCUSSION

Here, the patents-in-suit—like all typical design patents—do not have detailed specifications. The specifications include only: a preamble; cross-references to related applications; descriptions of the drawing figures; and a single claim. *See* Manual of Patent and Examining Procedure ("MPEP") § 1503.01. More importantly, these two design patents do not disclaim any features by way of broken lines; so for each patent, the entirety of the design shown in the figures is the claimed design. *Id.* § 1503.02(III); *In re Zahn*, 617 F.2d 261, 269 (C.C.P.A. 1980). Further, the patents have very brief prosecution histories. The only issues discussed in the prosecution histories were the inadequate use of surface shading, which the applicant subsequently corrected. *See* MPEP § 1503.02(II). The parties submitted no extrinsic evidence to support their respective claim constructions.

Stile suggests that the claims in both patents should be construed as "a bicycle frame of a certain design as shown in Figures 1–8." (Reply 12.) Counterdefendants seek more detail and urge the Court to note certain ornamental and functional features in order to guide the ultimate finder of fact concerning the ornamental-functional dichotomy for infringement and invalidity analysis. (Opp'n 7.)

With respect to Counterdefendants' perspective, the Court agrees that in some instances, ornamental features should be distinguished from functional ones in claim construction. *Richardson*, 597 F.3d at 1293. But this is not one such instance. The most important task is to facilitate examination of the design as a whole—ornamental and functional elements together. *Crocs*, 598 F.3d at 1302. Given the relative complexity of a bicycle frame design—as opposed to a pair of shoes or a nail buffer—it would be difficult to: 1) verbalize the bicycle frame design as shown in the figures; and 2) separate the ornamental features from the functional ones. At the very least, such a detailed verbal description would place undue emphasis on particular features of the claimed design. *Id.*

Unlike the spanner tool in *Richardson*, there are essentially no features on the bicycle frame design that are purely utilitarian.[1] 597 F.3d at 1293 ("[The] multi-function tool comprises several elements that are driven purely by utility . . . such as the handle, the hammer-head, the jaw, and the crowbar are dictated by their functional purpose."). Each of the bicycle frame features have ornamental and functional aspects. For instance, because bicycles have two wheels and are for human riders, bicycle frames typically follow a common ergonomic scheme: a main structural tube; a front tube connected to the main tube for the front turning assembly and wheel; rear brackets connected the main tube to attach a rear wheel; a bottom bracket connected to the main tube for placement of the pedal crankset; and a seat tube attached to the resulting assembly near the middle. There is no dispute that these features (and a few others not mentioned) provide some function. But as evident by the numerous designs available in the bicycle market, there is significant flexibility as to the precise

---

[1] The few purely utilitarian features of the bicycle frame design include screw holes or thru-holes for attaching various standardized bicycle components. These holes are sized to a standard to accommodate the standardized bicycle components available on the market. But these holes must be distinguished from the design of the bicycle-frame features. For instance, while the patented design includes a bottom bracket, which includes a thru-hole to accept a pedal crankset, the thru-hole is necessarily a utilitarian feature, but the bottom bracket itself is not—it has both ornamental and functional aspects.

location, attachment method, and ornamental look of each of the separate features. As an example: the main tube of the '638 patent needs not be precisely as shown—a slightly curved tube—for proper function. Such a main tube may be straight, radically curved, or of another design altogether—so long as the resulting assembly has sufficient mechanical strength to dynamically support the rider. Thus, despite the intermingling of ornamental and functional aspects of the claimed design, the Court finds that separating these aspects will result in undue emphasis of certain features.[2] *See Crocs*, 598 F.3d at 1303 (the commission's explicit reference to "a strap of uniform width" and "holes evenly spaced around the sidewall of the upper" was not required by the claimed design and led to an incorrect infringement analysis).

On the other hand, Stile's proposed claim construction is slightly too terse. It seeks to remove the words "ornamental" and "folding" from the claim. The Court finds this may ultimately confuse the trier of fact.

The Court is not persuaded in this case that it needs to verbally separate the ornamental aspects of the patented design from the functional aspects—it is the overall appearance that is important. *See L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993) ("The elements of the design may indeed serve a utilitarian purpose, but it is the ornamental aspect that is the basis of the design patent."). Therefore, based on the admonishment by the Federal Circuit in *Egyptian Goddess* to defer to the figures for claim construction of a design patent, and its requirement in *OddzOn* to construe the scope of the claim to identify the ornamental aspects of the design, the Court construes the claims as follows:[3]

/ / /

---

[2] Although every feature of the bicycle frame design provides some function, this merely limits the scope of the protected subject matter. *OddzOn Prods. v. Just Toys*, 122 F.3d 1396, 1406 (Fed. Cir. 1997) ("[T]hese functional characteristics [of tails and fins on a football] do not invalidate the design patent, but merely limit the scope of the protected subject matter.").

[3] *OddzOn*, 122 F.3d at 1405 ("Where a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent.").

1.  '638 patent – "The ornamental design for a folding bicycle frame, as shown in Figures 1–8."

2.  '615 patent – "The ornamental design for a folding bicycle frame, as shown in Figures 1–8."

This construction identifies the ornamental aspects of the patented designs without drawing undue attention to individual functional features. That is, by including the phrase "folding bicycle frame," the trier of fact may focus on comparing the overall ornamental look of the patented designs with that of the accused products (or prior art)—while at the same time appreciating the common functional aspects of folding bicycle frames and eliminating them from the comparison.

**IT IS SO ORDERED.**

December 14, 2012

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**